## Mitra v. Commonwealth.

(Decided January 31, 1928.)

### Appeal from Jefferson Circuit Court (Criminal Branch).

1   Criminal Law.—Refusal of correct instructions, covered by instructions given, is not error.

2.   Homicide.—Evidence held to sustain conviction of murder as against contention that defendant was insane for period of 45 seconds, during which he fired two shots at deceased, whom he was attempting to rob, after being struck on shoulder with meat cleaver by deceased.

3.   Criminal Law.—Where defendant admitted killing and gave detailed statement of facts, evidence of which was all obtainable in city where crime was committed in much less time than court gave defendant's counsel, conviction will not be reversed for alleged refusal to give him sufficient time to prepare defense; attorney being required only to prepare such defense as client makes available to him.

4.   Criminal Law.—Newly discovered evidence, relating largely to defendant's plea of insanity, weakness of character, and imbecility of mind, held not to warrant new trial, in view of evidence that defendant knew enough to work out details of and perpetrate crime.

5.   Criminal Law.—One who knows enough to work out details of crime and to perpetrate it must be held responsible therefor.

6   Criminal Law.—Where record shows that trial judge gave defendant every protection that law could give him, judgment of conviction will not be reversed on ground of commonwealth's attorney's sneers and curl of lip, not shown by record, in examination of witness and conduct before jury.

7.   Criminal Law.—That commonwealth's attorney, present in court when defendant's accomplice was brought in to enter plea or have case set, asked some one in jury's presence whether such accomplice, whom he did not know, was such individual, and was answered in affirmative, held not ground for reversal, as effort to show that such accomplice was of youthful appearance and hence incapable of dominating defendant.

LEO J. SANDMANN for appellant.

J. W. CAMMACK, Attorney General, and M. B. HOLIFIELD, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant was tried in the criminal division of the Jefferson circuit court on the charge of having mur-

dered Marion A. George, and the jury fixed his punishment at the highest known to the law; that is, that he should die by legal electrocution. His case has been brought here for a review, and his counsel has faithfully and well presented every point in the record which he conceives might amount to an error to the prejudice of his client. The record shows that he carefully protected every right of appellant in the trial court and that he was diligent in his efforts to see that appellant had a fair trial. On the other hand, the commonwealth's attorney and those assistants who took part in the prosecution of appellant have likewise represented the commonwealth, with credit to themselves and justice to both the appellant and the state. The trial judge was diligent to guard with jealous care the rights of the appellant. This court is called upon to discharge its duty in a careful investigation of the record to ascertain if perchance some legal wrong may have been done appellant during the progress of the trial in the lower court.

That appellant shot and killed Marion A. George is not denied. He so stated to the officers through whose hands he passed at the time and after his arrest, and he so stated on the witness stand. He was not a resident of Louisville, and had been in the city but a few days before he committed the offense. Carl Hord was jointly indicted with him. He and young Hord had become acquainted some weeks before the tragedy while they were working outside of Kentucky. They had traveled about from place to place in Ohio, Illinois, and Indiana. Hord came to Louisville, Ky., where he resided, in November, 1926, and upon his invitation appellant came with him. It was some days later that appellant obtained work. He spent a part of the time at the home of Hord, who resided with his parents.

A few days before the 13th of December, the day of the murder, Hord suggested to the appellant, Mitra, that they go out into the city and obtain some easy money. Appellant obtained a pistol from Sidney Hord, the brother of Carl. They went down into the west part of the city and spent some time examining the business places with the object of finding one which might be easily robbed. Marion A. George operated a grocery at Twenty-First and Magazine streets. It was his custom to close his grocery at 7 p. m. Appellant and Hord saw that no one was in this grocery except George, and they decided that it was suitable for their purpose. They

agreed that Hord should go into the store and call for cigarettes, and that, while he was making the purchase, appellant should come in and hold up the proprietor and apparently compel Hord to obtain the money. The plan was carried out to the extent of Hord's going into the store and calling for cigarettes. Appellant came in and leveled his pistol at George and ordered Hord to get the cash. George was behind the counter at the time, and appellant was on the outside of the counter. George walked a distance of about fifteen feet behind the counter and came out at the opening between two counters into the main store. He walked towards appellant, who backed towards the door. George grabbed a meat cleaver and struck appellant, who at the time threw up his arm in an effort to parry the blow, but the cleaver struck him on the shoulder, cutting through the clothing and into the flesh. Appellant immediately fired two shots at George, the first one missing and the second striking him in the abdomen. Hord and appellant ran from the building and entered an alley where appellant removed the pair of trousers which he was wearing and left them in the alley. They returned to the home of Hord and there told Sidney Hord about the shooting, and at the same time returned to him his pistol.

The next morning appellant decided that it would be best for him to leave the city, but he took occasion to inquire what had become of the pistol, and was assured that it had been thrown into the river. Appellant testified that Carl Hord insisted that he remain in Louisville until they could consummate another holdup, but he was unwilling to do so. He requested Sidney Hord to cross the river to Jeffersonville and learn whether the street cars were watched by the police force. Sidney reported that no policemen were on the cars, whereupon appellant boarded a street car, crossed to Jeffersonville, and walked out of the town on the road towards Indianapolis. His home was in St. Louis, and he reached that city about 7 p. m. on December 16th. Four days thereafter he was arrested and made a voluntary confession to the police officers in St. Louis. Upon his return to Louisville, he made another confession in substantially the same language to the police officers of that city. As before stated, he testified substantially to the facts as detailed above. He claimed that when he was struck with the cleaver everything went black before him for about 45 seconds, and when he again became conscious of what he was

doing he found the room full of smoke and was told by Hord that he had fired two shots. In his confession in St. Louis he did not state that he was rendered momentarily unconscious by the blow of the cleaver, but stated that the first shot he fired missed George and the second struck him in the abdomen. Neither did he state in his confession in Louisville that he was rendered unconscious by the blow of the cleaver. He testified, however, that the blow of the cleaver had the effect of depriving him of all conscious action for a space of 45 seconds.

It is the contention of counsel for appellant that appellant is a moron, easily led and easily persuaded. It is his theory of the case that appellant was induced to commit this crime through the dominance of Hord. Hord was 19 years of age at the time, and appellant was 22.

Numerous alleged errors in the instructions are pointed out by counsel for appellant. He offered thirteen instructions, all of which were refused by the court. These instructions relate to various theories of the defense. Some of them contain correct principles of law governing in such cases, while others do not. There is no instruction which was offered by appellant to which he was entitled which was not covered by the instructions given by the court. There was no error in refusing the instructions asked.

We have examined with exacting care the instructions given by the court, and our conclusion is that the court probably erred in the giving of some of the instructions, but not to the prejudice of appellant, but to the prejudice of the commonwealth. The objections offered by appellant to the instructions which were given by the court are without any merit whatever. It would serve no useful purpose to set out the instructions, and, if we should do so, it might be the means of causing some other trial court to give instructions more favorable to a defendant than would be justified by the law and the facts. The court correctly gave an instruction on murder, voluntary manslaughter, involuntary manslaughter, self-defense, insanity, and such other instructions as were necessary to guide the jury in reaching a correct conclusion under the evidence. The court must have given the self-defense instruction and the insanity instruction out of an abundance of caution. There was some evidence tending to show that appellant did not have a mind as bright as other boys of his age, and some of the experts testified that he did not know right from wrong at the

time he fired the fatal shot, but the jury had heard appellant testify, and they knew from his own lips that he had helped plan this robbery and had prepared himself with a weapon necessary to take the life of the man to be robbed if he should resist. They heard him testify about his efforts to conceal evidence of the crime, of his trip to St. Louis, of his arrest there, of his confession, and they knew more about whether he was responsible for the crime he committed than learned experts who testify about such things from information obtained by methods considered reliable by them. The jury did itself credit when it rejected the theory of the defense that during the act of robbery he was struck by a meat cleaver and thereby rendered irresponsible for his actions for a period of 45 seconds. He had mind enough to reason about the crime up to the beginning of this period of 45 seconds, and he had mind enough to escape immediately after the 45 seconds had expired, and we do not believe that any jury of good citizens would accept his statements or the statements of experts that for the brief space of 45 seconds he was insane and should not be held responsible for taking the life of the man whom he was seeking to rob when this period of alleged blankness fell upon him.

Counsel for appellant complains that he was only employed in the case on the 7th day of January and the trial court refused to give him sufficient time in which to prepare a defense. The crime was committed in the city of Louisville, and the evidence of the crime was all there. Appellant admitted that he killed George, and he gave a detailed statement of the facts surrounding the killing. Learned counsel was in a position to place himself in possession of all of these facts in much less time than the court gave him. What preparation he expected to make in the way of defense we do not know, but an attorney should play the cards that are dealt him, and that is all that the law requires of him. His client was the dealer, and the attorney is not responsible for the cards that he holds.

It is urged by counsel for appellant that he had discovered additional evidence which might have changed the verdict of the jury if it had been introduced. Numerous affidavits have been filed. We have examined them with great care, and find nothing to support the contention of counsel for appellant that it was material evidence. It relates largely to appellant's plea of insanity,

of his weakness of character and the supposed imbecility of his mind. If he knew enough to work out the details of this crime and to perpetrate it, and it is shown by the evidence in this case that he did, he must be held responsible for the crime which he committed.

The conduct of the commonwealth's attorney is complained of, and it is pointed out that we cannot see the sneers and the curl of his lip as he examined the witness and in his conduct before the jury. The trial court saw the conduct of the commonwealth's attorney if it was different from that which appears in the record, and the record in this case shows that the trial judge was throwing every protection around the appellant that the law could give him, and we are satisfied that he did not allow the commonwealth's attorney to do and say things prejudicial to his interest without its being made a part of the record. About the time of the completion of the trial, Hord was brought into court for the purpose of entering his plea or having his case set down for a day. The commonwealth's attorney, who was present in court at the time, did not know Hord, and he asked some one if the defendant who had been brought into court was Hord, and was told that Hord was the man. This occurred in the presence of the jury. Counsel for appellant complains about it bitterly and vehemently. He argues that it was an effort to show that Hord was of youthful appearance and therefore not capable of dominating the appellant. Verdicts cannot be overturned by this court on account of things so trivial. The appellant is young, and he is approaching a tragic fate, but the law must be enforced, and youth cannot be excused for crimes such as this. He had a trial that is free from even the most trivial errors, and, however hard the task may be, the duty of this court is plain.

Judgment is affirmed.

Whole court sitting.